JORDAN T. SMITH, ESQ., Nevada Bar No. 12097
jtsmith@bhfs.com
BRIANNA SMITH, ESQ., Nevada Bar No. 11795
bsmith@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JAI OPETAIA, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BOXING FEDERATION, INC., a New Jersey non-profit organization;<br><br>    Defendant. | Case No.:<br><br><br>**COMPLAINT** |

For his Complaint, Plaintiff Jai Opetaia ("Jai" or "Plaintiff") hereby states and alleges the following against Defendant International Boxing Federation, Inc. ("IBF" or "Defendant"):

**<u>NATURE OF THE CASE</u>**

1.      Corruption, backroom dealings, and industry-wide collusion in the sport of boxing sound like movie clichés, but unfortunately for world champion and Plaintiff Jai Opetaia they are very real. This case is just the latest example of boxing's entrenched insiders abusing an athlete the sport depends on—and without whom they themselves would be irrelevant. Jai fought at least ten times under the Defendant International Boxing Federation's sanctioning banner, becoming a world champion, and always paying the IBF the sanctioning fees they demanded. Jai broke his jaw in *two* places and made immeasurable personal and physical sacrifices to win and defend the IBF title. But when Jai signed with a new promotional company—Zuffa Boxing—the IBF and other old-guard boxing insiders (including other sanctioning bodies) conspired to retaliate.

2.      On March 8, 2026, Jai was scheduled to defend his IBF title. The IBF sanctioned

the fight knowing that the inaugural Zuffa Boxing cruiserweight company branded-belt was also on the line.

3.      However, after the President of the IBF (sitting in his home) allegedly felt "embarrassed" because of the IBF's belt placement during a press conference (at an arena in Las Vegas), the IBF—encouraged by boxing's establishment (other sanctioning bodies and promoters)—abruptly punished Jai. The IBF withdrew its sanctioning 48 hours before the fight after accepting payment and despite approving Zuffa Boxing's involvement from the start. Jai was placed in an impossible position: Pull out of a fight he had spent months training for, and lose his seven-figure compensation, or risk being stripped of his championship. Jai continued forward with the fight and, following his victory, the IBF formally stripped him of his hard-earned title.

4.      The IBF's unprecedented actions are the product of coordinated, industry-wide collusion designed to penalize Jai for signing with Zuffa Boxing and to deter other athletes from doing the same. The IBF has conspired with other sanctioning bodies, including the World Boxing Council ("WBC"), to strip Jai of his IBF title and eliminate any opportunity for him to compete for the "Big Four" titles or to ever achieve his dream of becoming a "unified" champion (holding a title from each of the four major sanctioning bodies).

5.      Jai has no choice but to enlist the courts to fight back. Far from deterring Jai, the IBF's conspiracy merely confirms what fans and fighters have long known: the IBF and its ilk are on their last legs. The IBF's actions violate the Muhammad Ali Boxing Reform Act ("Ali Act") and constitute fraud, breach of contract, breach of the implied covenant, intentional interference with contractual relations, and conspiracy. Jai seeks the return of his rightful IBF cruiserweight championship title and financial compensation for the harm he has suffered and continues to suffer. In the meantime, Jai is entitled to injunctive relief preventing the IBF from naming a new cruiserweight title champion or holding any bout for the IBF cruiserweight title.

## THE PARTIES

6.      Plaintiff Jai Opetaia is a citizen of Australia.

7.      Defendant International Boxing Federation, Inc. is allegedly a non-profit corporation organized under the laws of the State of New Jersey.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**JURISDICTION AND VENUE**

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs. Plaintiff is a citizen of Australia and Defendant is allegedly a non-profit organization under the laws of the State of New Jersey. No Defendant is a citizen of Nevada.

9.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the law of the United States via the Muhammad Ali Boxing Reform Act of 2000.

10.    This Court has personal jurisdiction over IBF because IBF has purposefully availed itself of the privilege of conducting business in Nevada and Jai's claims arise out of or relate to IBF's contacts in Nevada. IBF has knowingly contracted, transacted business, and committed unlawful acts or omissions in Nevada, the injurious effects of those acts or omissions have been expectedly felt by Jai in Nevada.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Specifically, the March 8, 2026 bout and surrounding circumstances occurred in Las Vegas, Nevada. Many of the witnesses, including those from the Nevada Athletic Commission overseeing the March 8 bout, reside in, or have a connection to, Nevada.

**GENERAL ALLEGATIONS**

12.    Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

13.    Jai was born to box. At sixteen, he became the first Australian to win a junior boxing championship. Jai later became the youngest boxer to make the Australian Olympic team and he was the youngest boxer in the 2012 Olympics heavyweight division.

14.    Jai turned pro in 2015 and quickly amassed an undefeated record. In the process, Jai won several regional, Australian, Asia-Pacific, and Oceania titles from the IBF, WBC, World Boxing Association ("WBA") and World Boxing Organization ("WBO").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15. Together, the IBF, WBA, WBC, and WBO are known as the "Big Four" boxing sanctioning bodies. A sanctioning body is a separate commercial organization with its own rankings, rules, and championships. It charges fighters and promoters "sanctioning fees" to allow a bout to take place for its title or under its banner.

16. The IBF has a set of "Rules Governing Championship Contests," bout rules, and a "Fee Schedule" for sanctioning bouts. The champions and challengers must abide by the rules, pay the IBF, and cover expenses for the referee, judges, and supervisors.

17. Although the credibility of the Big Four has been steadily declining over decades due to controversies, politics, and perceived corruption, their titles maintain a certain level of prestige that allows boxers to generate greater income through purse bids, broadcast deals, and sponsorships. There is also a reputational boost and mainstream notoriety associated with holding a Big Four title.

18. Historically, boxing has had other non-title honors bestowed on fighters from non-sanctioning entities. These non-title honors have similar financial and reputational advantages. The *Ring Magazine* "title" is one of the most well-known. The *Ring Magazine* title serves as a journalistic recognition and is not associated with any sanctioning body or sanctioning fees.

19. In 2022, with a professional record of 22-0, Jai won the IBF championship and *Ring Magazine* lineal cruiserweight championship against Mairis Briedis. Jai successfully defended the IBF title the next year against Jordan Thompson.

20. Jai was stripped of the title in 2023 but regained it in 2024 in a rematch against Briedis. Jai defended his IBF title and *Ring Magazine* title four more times in 2024 and 2025.

21. Jai paid the IBF's required sanctioning fees for each bout. In all, the IBF made hundreds of thousands from Jai's fights and profited from being associated with his generational talent.

22. Jai signed a promotional agreement with Zuffa Boxing, a new promotional company that launched in January 2026. Zuffa Boxing is a joint venture between TKO Group Holdings, Inc. and Sela, the entertainment conglomerate. The "Zuffa" brand is associated with the Ultimate Fighting Championship ("UFC") and its CEO, Dana White.  White has stated that he was motivated

to enter the realm of boxing because the sport is "broken, fragmented, and the big fights never happen."[1] Zuffa Boxing and White want to fix boxing and create bigger and better opportunities for fighters and fans.

23.    Unlike the Big Four, Zuffa Boxing is not a sanctioning body. Its belts are not "titles" like the Big Four's. Rather, Zuffa Boxing championship belts are company-branded honorifics akin to the *Ring Magazine* belt. The Zuffa Boxing championship belts are trophies and tokens of recognition.

24.    The Big Four generally, and the IBF specifically, met Zuffa Boxing's entry into the sport with worry masked as ridicule. The UFC's and White's success in mixed martial arts threatened to shatter the Big Four's stranglehold on athletes and title fights.

25.    Zuffa Boxing's first three events were wildly successful. The events' successes confirmed and amplified the Big Four's concerns about Zuffa Boxing's impact and the threat to the Big Four's business model. The Big Four became hyper-focused on protecting their bottom-lines at the expense of the fans and the fighters.

26.    For its fourth event, Zuffa Boxing announced Jai would defend his IBF title on March 8, 2026 in Las Vegas against the IBF's #15 ranked contender, Brandon Glanton. Other honorifics were up for grabs, including Zuffa Boxing's inaugural cruiserweight championship belt and the *Ring Magazine* belt.

27.    During the promotion of Opetaia vs. Glanton, Zuffa Boxing's championship belt was at all times characterized and classified as an honorific, trophy, or other token of recognition—not the "title" of another sanctioning body. And, again, the IBF had sanctioned bouts many times before sanctioning Jai's bouts when the *Ring Magazine* belt was also on the line.

28.    Notwithstanding Zuffa Boxing's involvement from the start, the IBF agreed to sanction the Opetaia-Glanton bout. The IBF knew that Jai's IBF title would be on the line alongside the Zuffa Boxing championship belt as well as the *Ring Magazine* belt.

---

[1] Chris Mannix, *Dana White, Turki Alalshikh Aiming to Upend Boxing's Fractured Foundation*, Sports Illustrated (March 12, 2025) *available at* https://www.si.com/boxing/dana-white-turki-alalshikh-tko-promotion-upend-boxing-fractured-foundation.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

29. The IBF admits, including in a March 23, 2026 press release, that the IBF had no objection to sanctioning the Opetaia-Glanton bout if the Zuffa Boxing championship belt is considered as a trophy or token of recognition.

30. At the press tour leading into the fight, the Zuffa Boxing and IBF belts and branding received equal prominence. At all times, the IBF was aware of, and condoned, that the winner of the Opetaia-Glanton bout would become the IBF Cruiserweight Champion and, simultaneously, would receive the Zuffa Boxing and *Ring Magazine* belts as an additional reward.

31. Based on the IBF's representations that it would sanction the Opetaia-Glanton bout with the Zuffa Boxing Championship Belt to be awarded, Jai instructed Zuffa to pay for the IBF's designated supervisor/inspector to travel from Texas to Las Vegas to oversee the fight.

32. Per the IBF's request, on the Friday morning before the bout (March 6, 2026), Jai directed payment of the required $73,000.00 in sanctioning fees. The IBF accepted the payment.

33. The IBF accepted Jai's sanctioning fee payment even though the IBF had not made the necessary Ali Act disclosures to the state boxing commission overseeing the March 8 bout, i.e., the State of Nevada Athletic Commission.

34. When accepting Jai's sanctioning fee payment, the IBF expressly and implicitly through its conduct represented to, and contracted with, Jai that the IBF was going to perform and sanction the Opetaia-Glanton bout and that the winner would be declared the IBF Cruiserweight Champion even if the winner also received the Zuffa Boxing championship belt.

35. Unbeknownst to Jai, the IBF's express and implied representations were false. The IBF never intended to sanction Jai's bout with Zuffa Boxing involved. Behind the scenes, IBF executives, including Daryl Peoples, were communicating with executives at the other Big Four and other boxing insiders and planning a scheme to inflict the maximum amount of reputational and financial harm on Jai, to punish him for signing with Zuffa Boxing.

36. The other organizations and individuals involved in the plot include, but are not limited to, the WBC, WBA, WBO, Mauricio Sulaimán, Gilberto Mendoza, Gustavo Olivieri, Levi Martinez, Alberto Leon, and Eddie Hearn. Upon information and belief, evidence of such conspiracy can be found in group text messages and WhatsApp chains.

37. In the days leading to the bout, Eddie Hearn, Chairman of Matchroom Boxing and Jai's former promoter, foreshadowed that something was waiting in the wings. He publicly stated that the old-time Big Four sanctioning bodies would "make a stance sooner than you think" and "Jai will get stripped."

38. The coconspirators coordinated to exert undue influence and pressure to coerce the IBF into twisting its own rules, breaking its promises, and interfering with Jai's agreements.

39. The IBF and its coconspirators finally revealed and consummated the plot at the most damaging moment: after the final press conference less than 48 hours before the fight, when the fighters had spent months training, the venue was booked, all preparations were finalized, and fans had bought tickets and traveled.

40. At the last press conference, the IBF belt was displayed prominently in front of Jai. In fact, during the press conference, Jai sat behind the IBF and *Ring Magazine* belts—the Zuffa Boxing belt was not displayed.



41. Yet with the urging and encouragement of its collaborators, the IBF feigned "disrespect" and used the "Zuffa Championship" as a pretext to suddenly withdraw its sanctioning.

42. The IBF's Daryl Peoples fired off an email stating that he felt "disappointment" and "embarrassment" because he perceived the IBF was being "presented as secondary[.]" Mr. Peoples instructed the IBF's supervisor, who had traveled to Las Vegas for the bout at Zuffa Boxing's expense, to return to Texas immediately.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

43. On March 6, 2026, the IBF issued a press release announcing that it had withdrawn its sanctioning of the fight. The IBF pretended to just learn that the match would violate the IBF's internal "Rule 5.E.2" governing unification bouts with so-called "elite contenders" from the WBA, WBC, and WBO. For the first time, the IBF faked that the Zuffa Boxing championship belt was not "a trophy or token of recognition" and was, instead, somehow an unrecognized "title" from another sanctioning body (which Zuffa Boxing is not).

44. The IBF's interpretation of its rules is arbitrary, capricious, and bad faith. The Opetaia-Glanton bout cannot legitimately be considered a "unification bout" merely based on the Zuffa Boxing championship belt's presence. The arbitrariness of this position is emphasized by the fact that many times before the IBF had sanctioned Jai's bouts when the *Ring Magazine* belt was also on the line.

45. The next day, still before the fight, Marc Ratner—a hall of fame boxing regulator and the UFC's Senior Vice President of Government and Regulatory Affairs—sent a letter to Mr. Peoples imploring the IBF to reconsider its sanctioning withdrawal. Mr. Ratner explained once more that the "Zuffa Boxing belt is a company branded belt—it is exactly like the Ring Belt [because Zuffa Boxing] is not a sanctioning body; we do not charge sanctioning fees; there are no mandatory bouts." Mr. Ratner also detailed that "declaring vacant the IBF Cruiserweight title will cause Jai significant harm."

46. The IBF did not relent. It returned Jai's sanctioning fees but the damage was already done (and continues to this day).

47. Even so, Jai overcame the eleventh-hour distraction and extremely upsetting situation to beat Glanton via unanimous decision. Jai was bestowed the first Zuffa Boxing cruiserweight belt and retained the *Ring Magazine* cruiserweight belt.

48. Shortly after the fight, the IBF delivered the conspiracy's next blow. The IBF's Board of Directors allegedly held a teleconference on March 19, 2026 and voted to vacate and strip Jai's IBF cruiserweight title.

49. There are text or WhatsApp messages between the conspirators congratulating the IBF for stripping Jai and injuring him.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

50. Despite being fully aware of the nature of the Zuffa Boxing championship belt and the extreme financial and reputational harm its actions would inflict on Jai, the IBF and its coconspirators consciously and maliciously disregarded Jai's rights and subjected him to cruel and unjust hardship by withdrawing its sanctioning and stripping Jai's title.

51. The IBF's concerted actions with its coconspirators has inflicted significant financial and reputational harm on Jai inside the ring and out. Refusing to sanction the Glanton bout and stripping Jai interfered with existing and prospective contracts, and hindered lucrative future fights. Stripping the title has diminished Jai's reputation, marketability, and overall brand-value as a professional boxer.

52. For example, David Benavidez—a WBA and WBO champion—has publicly stated that he is no longer interested in a potentially big payday fight with Jai because Jai no longer holds the IBF title.[2]

53. The conspirators and, most recently, the WBC have taken steps to freeze out Jai from other future bouts. The WBC has threatened to strip other boxers' titles if they contract to fight Jai. The WBC's Mauricio Sulaimán has publicly stated that current WBC Cruiserweight Champion Noel Mikaelian will be stripped if he faces Jai instead of David Benavidez—the same boxer who said he will no longer fight Jai now that Jai has been stripped.

54. Indeed, mere hours after a story posted online that Jai and WBC champion Mikaelian were on the verge of reaching a deal to fight, the WBC issued a near-unprecedented order that Mikaelian would have to fight Benavidez, a champion of two other sanctioning organizations. This move by the WBC is a transparent act of retaliation designed solely to harm and punish Jai for signing with Zuffa Boxing and intimidate others from doing the same.

55. To recover his IBF title and obtain compensation, this litigation is Jai's only option. Any further action through, or communications with, the IBF will be entirely futile given its bad faith, ill motives, corruption, and participation in the conspiracy against Jai.

---

[2] *Benavidez: Opetaia 'Ship Has Sailed' Because IBF Stripped Him*, Ring Mag. (Apr. 30, 2026) *available at* https://www.ringmagazine.com/news/benavidez-opetaia-ship-has-sailed-because-ibf-stripped-him-3HTanCnlql6JIjRBK68Rhm.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**FIRST CLAIM FOR RELIEF**

**Violation of Muhammad Ali Boxing Reform Act**

56.     Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

57.     The Ali Act provides for a private right of action. It states:

Any boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorneys fees and expenses.

15 U.S.C. § 6309(d).

58.     15 U.S.C. § 6307d states:

A sanctioning organization shall not be entitled to receive *any compensation* directly or indirectly in connection with a boxing match until it provides to the boxing commission responsible for regulating the match in a State a statement of—

(1) all charges, fees, and costs the organization will assess any boxer participating in that match;

(2) all payments, benefits, complimentary benefits, and fees the organization will receive for its affiliation with the event, from the promoter, host of the event, and all other sources; and

(3) such additional information as the commission may require.

(emphasis added).

59.     The IBF did not make the Ali Act's statutory disclosures to the State of Nevada Athletic Commission before accepting Jai's $73,000 sanctioning fees. Thus, the IBF accepted compensation in violation of 15 U.S.C. § 6307d.

60.     As a direct and proximate cause of the IBF's violation of the Ali Act, Jai has been and will continue to be damaged in an amount to be proven at trial.

61.     Pursuant to 28 U.S.C. §§ 2201-2202, Jai is also entitled to a declaratory judgment that the IBF has violated the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6307d.

62.     Jai has been required to retain the services of counsel and therefore seeks to recover his costs, expenses, and attorneys' fees to the extent permitted under the law and 15 U.S.C. § 6309(d).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## SECOND CLAIM FOR RELIEF

### Fraud – Intentional Misrepresentation and Omission

63.     Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

64.     As set forth herein, the IBF made affirmative misrepresentations of material fact to Jai that the IBF would sanction the Opetaia-Glanton bout and that the winner of the bout would be considered the IBF Cruiserweight Champion notwithstanding that the Zuffa Boxing company-branded championship belt and the *Ring Magazine* title would also be awarded. Daryl Peoples and other IBF agents represented to Jai and his team that the IBF had no objection to Zuffa Boxing's involvement or Zuffa Boxing's championship belt being on the line. The IBF's own press releases acknowledge these communications at least occurred on February 11, 2026 and March 3, 2026.

65.     The IBF's representations were false, misleading, and deceiving.

66.     The IBF omitted and concealed that it never intended to sanction the Opetaia-Glanton bout with Zuffa Boxing's involvement. Instead, the IBF deceived Jai to inflict maximum reputational and financial harm on him. The IBF hid that it was participating in a conspiracy with other Big Four sanctioning bodies to ostracize and alienate Jai for working with Zuffa Boxing.

67.     The IBF made the misrepresentations and omissions with knowledge or belief of their falsity or without sufficient foundation to make them.

68.     The IBF made the affirmative misrepresentations and omissions that it would sanction the Opetaia-Glanton bout, and allow the winner to be declared the IBF cruiserweight champion, with the intent to cause or induce Jai's reliance on them.

69.     Jai justifiably relied on the IBF's representations and omissions. Jai trained for months at great financial, personal, and physical expense. Jai also contracted with Zuffa Boxing and was ready and willing to compete on March 8, 2026. Jai attended several promotional activities leading up to this fight. Jai also paid the IBF's $73,000 sanctioning fees in reliance on the IBF's representations and omissions.

70.     As a direct and proximate cause of the IBF's fraudulent misrepresentations and omissions, and Jai's reliance thereon, Jai is entitled to the benefit-of-his-bargain and to be placed

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

in the same position he would have been in absent the IBF's fraud. Accordingly, since he won the Glanton bout, Jai is entitled to have his IBF Cruiserweight Championship title awarded and restored to him. In the meantime, Jai is entitled to injunctive relief preventing the IBF from holding a bout for the cruiserweight title and preventing the IBF from naming a new IBF cruiserweight title champion.

71.    Additionally, as a direct and proximate cause of the IBF's fraudulent misrepresentations and omissions, and Jai's reliance thereon, Jai has been damaged in an amount that exceeds $75,000 to be proven at trial.

72.    The IBF's misrepresentations and omissions were fraudulent and done with the intent to deprive Jai of his rights or to otherwise injure him. Similarly, the IBF's misrepresentations and omissions were done with malice, oppression, and with a conscious disregard for Jai's rights and with knowledge of the probable harmful consequences and a willful and deliberate failure to act to avoid those consequences. Accordingly, Jai is entitled to punitive damages under NRS Chapter 42.

73.    Jai has been required to retain the services of counsel and therefore seeks to recover his costs and attorneys' fees to the extent permitted under the law.

### THIRD CLAIM FOR RELIEF

**Breach of Contract**

74.    Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

75.    There was an enforceable implied-in-fact contract between Jai and the IBF to sanction the Opetaia-Glanton bout and to declare the winner as the IBF Cruiserweight Champion notwithstanding that the Zuffa Boxing championship belt would be awarded too. As manifested by their respective conduct, the parties intended to contract and exchanged promises whereby Jai would pay $73,000 in sanctioning fees and box Glanton and, in exchange, the IBF would sanction the bout and declare the winner as the IBF Cruiserweight Champion even if the winner received the Zuffa Boxing championship belt. By accepting Jai's performance and sanctioning fees, the IBF agreed that the Opetaia-Glanton bout was appropriately sanctioned and there was no valid

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

basis to strip him for participating in it.

76. Jai performed all of his obligations required under the implied-in-fact contract or was otherwise excused from performing.

77. As set forth herein, the IBF materially breached the implied-in-fact contract and failed to perform without excuse by refusing to sanction the Opetaia-Glanton bout because of the Zuffa Boxing championship belt under false conspiratorial pretenses after agreeing to sanction it and being paid to do so. The IBF also materially breached the implied-in-fact contract by vacating and stripping Jai of his cruiserweight title after wrongfully refusing to sanction the Opetaia-Glanton bout. As a direct and proximate cause of the IBF's material breaches of the implied-in-fact contract, Jai is entitled to an order of specific performance to place him in the same position that he would have been in had the IBF fully performed its obligations. Thus, the Court should enter an order of specific performance returning the IBF Cruiserweight Championship title to Jai because the bout should have been sanctioned and Jai won. In the meantime, Jai is entitled to injunctive relief preventing the IBF from holding a bout for the cruiserweight title and preventing the IBF from naming a new IBF cruiserweight title champion.

78. Additionally, as a direct and proximate cause of the IBF's material breaches of the implied-in-fact contract, Jai has been and will continue to be damaged in an amount that exceeds $75,000 to be proven at trial.

79. Jai has been required to retain the services of counsel and therefore seeks to recover his costs and attorneys' fees to the extent permitted under the law.

### FOURTH CLAIM FOR RELIEF

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

80. Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

81. There was an enforceable implied-in-fact contract between Jai and the IBF to sanction the Opetaia-Glanton bout and to declare the winner as the IBF Cruiserweight Champion notwithstanding that the Zuffa Boxing championship belt would be awarded too. As manifested by their conduct, the parties intended to contract and exchanged promises whereby Jai would pay

$73,000 in sanctioning fees and box Glanton and, in exchange, the IBF would sanction the bout and declare the winner as the IBF Cruiserweight Champion. By accepting Jai's performance and sanctioning fees, the IBF agreed that the Opetaia-Glanton bout was appropriately sanctioned and there was no valid basis to strip him for participating in it.

82. Implied in every contract under Nevada law is an obligation of good faith and fair dealing.

83. As set forth herein, IBF has breached the implied covenant of good faith and fair dealing in the implied-in-fact contract to sanction the Opetaia-Glanton bout and declare the winner as the IBF Cruiserweight Champion by performing the contract in a manner unfaithful to its purpose. The IBF's decision to withhold sanctioning and vacate Jai's title was made in bad faith and for the pretextual reasons by mischaracterizing the nature of the Zuffa Boxing championship belt. The IBF's breaches of the implied covenant were the product of its collusion with the other Big Four sanctioning bodies to punish Jai for signing with Zuffa Boxing and to deter other boxers from doing the same.

84. Consequently, Jai's reasonable, specific, and justified expectations under the implied-in-fact contract have been denied. As a direct and proximate cause of the IBF's breaches of the implied covenant of good faith and fair dealing, Jai is entitled to an order of specific performance to place him in the same position that he would have been in had the IBF fully performed in a good faith manner consistent with Jai's justified expectations. Thus, the Court should enter an order of specific performance returning the IBF Cruiserweight Championship title to Jai because the bout should have been sanctioned and Jai won. In the meantime, Jai is entitled to injunctive relief preventing the IBF from holding a bout for the cruiserweight title and preventing the IBF from naming a new IBF cruiserweight title champion.

85. Additionally, as a direct and proximate cause of the IBF's breaches of the implied covenant of good faith and fair dealing, Jai has been and will continue to be damaged in an amount that exceeds $75,000 to be proven at trial.

86. Jai has been required to retain the services of counsel and therefore seeks to recover his costs and attorneys' fees to the extent permitted under the law.

**FIFTH CLAIM FOR RELIEF**

**Promissory Estoppel**

87.     Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

88.     The IBF promised Jai that the IBF would sanction the Opetaia-Glanton bout and declare the winner as the IBF Cruiserweight Champion even though the winner would also receive the Zuffa Boxing championship belt.

89.     The IBF should have reasonably expected its promises to induce action or forbearance on Jai's part.

90.     The IBF's promises did, in fact, induce action and forbearance on Jai's part.

91.     The only way to avoid injustice is to enforce the IBF's promises, including by restoring and awarding the IBF Cruiserweight Championship to Jai because the bout should have been sanctioned and Jai won. In the meantime, Jai is entitled to injunctive relief preventing the IBF from holding a bout for the cruiserweight title and preventing the IBF from naming a new IBF cruiserweight title champion.

92.     As a direct and proximate cause of the IBF's breaches of its promises, Jai has been and will continue to be damaged in an amount that exceeds $75,000 to be proven at trial.

93.     Jai has been required to retain the services of counsel and therefore seeks to recover his costs and attorneys' fees to the extent permitted under the law.

**SIXTH CLAIM FOR RELIEF**

**Intentional Interference with Prospective Economic Advantage**

94.     Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

95.     Prospective contractual relationships exist and existed for Jai's future bouts. For example, before the IBF's unlawful refusal to sanction the Opetaia-Glanton bout and stripping of Jai, Jai had legitimate and reasonable expectations of future fights against David Benavidez and Noel Mikaelian, and others along with all the associated financial benefits from such fights.

96.     The IBF knew or should have known about these prospective contractual

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

relationships when it decided to withdraw its sanctioning of the Opetaia-Glanton bout and to strip Jai.

97.    The IBF intended to harm Jai by disrupting, interfering, and preventing these relationships.

98.    The IBF had no privilege or justification for its actions.

99.    The IBF's conduct has caused actual harm to Jai. Despite prior intentions to do so, Benavidez has refused to contract to fight Jai now that Jai has been stripped after the IBF unlawfully withdrew its sanctioning of the Opetaia-Glanton bout. Mikaelian is being prevented from fighting Jai because, if he does, the WBC announced that it will strip him of his title.

100.    As a direct and proximate cause of the IBF's actions, Jai has been and will continue to be damaged in an amount that exceeds $75,000 to be proven at trial.

101.    The IBF's interference was done with the intent to deprive Jai of his rights or to otherwise injure him. Similarly, the IBF's interference was done with malice, oppression, and with a conscious disregard for Jai's rights and with knowledge of the probable harmful consequences and a willful and deliberate failure to act to avoid those consequences. Accordingly, Jai is entitled to punitive damages under NRS Chapter 42.

102.    Jai has been required to retain the services of counsel and therefore seeks to recover his costs and attorneys' fees to the extent permitted under the law.

### SEVENTH CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations

103.    Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

104.    There exists a valid contract between Jai and Zuffa Boxing.

105.    The IBF knew about this contract.

106.    As set forth herein, the IBF committed intentional acts intended or designed to disrupt this contractual relationship.

107.    There was actual disruption of this contract when the IBF withdrew its sanctioning of the Opetaia-Glanton bout and later stripped Jai's IBF Cruiserweight Championship title.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

108.    As a direct and proximate cause of the IBF's actions, Jai has been and will continue to be damaged in an amount that exceeds $75,000 to be proven at trial.

109.    The IBF's interference was done with the intent to deprive Jai of his rights or to otherwise injure him. Similarly, the IBF's interference was done with malice, oppression, and with a conscious disregard for Jai's rights and with knowledge of the probable harmful consequences and a willful and deliberate failure to act to avoid those consequences. Accordingly, Jai is entitled to punitive damages under NRS Chapter 42.

110.    Jai has been required to retain the services of counsel and therefore seeks to recover his costs and attorneys' fees to the extent permitted under the law.

### EIGHTH CLAIM FOR RELIEF

### Aiding and Abetting

111.    Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

112.    The IBF knows or should know that the WBA, WBO, and WBC's blacklisting of Jai from future bouts and boxing opportunities constitutes a breach of duties to Jai.

113.    The IBF has aided and abetted their unlawful acts by substantially assisting and encouraging their conduct and by withdrawing the IBF's sanction of the Opetaia-Glanton bout and stripping Jai of his title so that the other organizations have a false pretext not to deal with Jai.

114.    Jai has sustained damages as a result of the IBF's aiding and abetting including the loss of the Benavidez and Mikaelian bouts.

115.    As a direct and proximate cause of the IBF's actions, Jai has been and will continue to be damaged in an amount that exceeds $75,000 to be proven at trial.

116.    The IBF's aiding and abetting was done with the intent to deprive Jai of his rights or to otherwise injure him. Similarly, the IBF's aiding and abetting was done with malice, oppression, and with a conscious disregard for Jai's rights and with knowledge of the probable harmful consequences and a willful and deliberate failure to act to avoid those consequences. Accordingly, Jai is entitled to punitive damages under NRS Chapter 42.

117.    Jai has been required to retain the services of counsel and therefore seeks to recover

his costs and attorneys' fees to the extent permitted under the law.

## NINTH CLAIM FOR RELIEF

### Conspiracy

118. Jai repeats, realleges, and incorporates all of the allegations contained in the preceding and subsequent paragraphs as though fully set forth herein.

119. The IBF, WBA, WBO, WBC, Mauricio Sulaimán, Levi Martinez, Gilberto Mendoza, Gustavo Olivieri, Alberto Leon, Eddie Hearn, and others yet to be discovered have acted in concert with the intent to accomplish the unlawful objectives alleged herein, including defrauding Jai, inducing breaches of contract and the implied covenant of good faith and fair dealing with Jai, and interfering with Jai's existing and prospective contractual relations.

120. Each of the coconspirators knowingly took actions or inactions in furtherance of the conspiracy by encouraging, coercing, inducing and covering up the unlawful acts alleged herein. All of the conspirators lent aid and assistance to the IBF's decision to withdraw its sanctioning of the Opetaia-Glanton bout and then strip Jai of his IBF Cruiserweight title. The Big Four and their agents have acted—and continue to act—in concert to retaliate against Jai for signing with Zuffa Boxing and to disrupt any pending or future boxing opportunities for Jai like the Benavidez and Mikaelian bouts with their associated financial and reputational benefits.

121. As a direct and proximate cause of the IBF's and its coconspirators' actions, Jai has been and will continue to be damaged in an amount that exceeds $75,000 to be proven at trial.

122. The IBF's and its coconspirators' actions were done with the intent to deprive Jai of his rights or to otherwise injure him. Similarly, the IBF and it coconspirators have acted with malice, oppression, and with a conscious disregard for Jai's rights and with knowledge of the probable harmful consequences and a willful and deliberate failure to act to avoid those consequences. Accordingly, Jai is entitled to punitive damages under NRS Chapter 42.

123. Jai has been required to retain the services of counsel and therefore seeks to recover his costs and attorneys' fees to the extent permitted under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jai Opetaia prays for the following relief:

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1. Judgment against Defendant;

2. An order of specific performance against Defendant reinstating and awarding Plaintiff the IBF Cruiserweight Championship Title, including any related and necessary injunctive or declaratory relief;

3. Temporary, preliminary, and permanent injunctive relief maintaining the status quo and prohibiting Defendant from conducting any bout for the IBF Cruiserweight Championship Title or naming a new IBF Cruiserweight Title Champion (interim or otherwise);

4. All forms of nominal, compensatory, consequential, and monetary damages, including punitive and exemplary, against Defendant in amounts to be determined at trial;

5. Pre- and post-judgment interest;

6. Costs and attorneys' fees as permitted by law; and,

7. Any additional or further relief this Court deems just and proper.

Dated this 14th day of July, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By:/s/ Jordan T. Smith
JORDAN T. SMITH, ESQ., Nevada Bar No. 12097
jtsmith@bhfs.com
BRIANNA SMITH, ESQ., Nevada Bar No. 11795
bsmith@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Plaintiff*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101